# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| ASTRAZENECA PHARMACEUTICALS LP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:24-cv-04143-MDH |
| CATHERINE HANAWAY, in her official capacity as the Attorney General of Missouri, et al., | ) ) ) ) ) | |
| Defendants, | ) ) | |
| And | ) ) | |
| MISSOURI HOSPITAL ASSOCIATION And MISSOURI PRIMARY CARE ASSOCIATION, | ) ) ) ) | |
| Intervenors. | ) | |

## ORDER

Before the Court is Plaintiff's Motion to Compel Compliance with Third-Party Subpoenas. (Doc. 135). Plaintiff filed Suggestions in Support (Doc. 136), nonparties, Mercy Health ("Mercy") SSM Health Care Corporation ("SSM") and the Curators of the University of Missouri ("University of Missouri") filed Suggestions in Opposition (Doc. 139); Intervenors and nonparties Citizens Memorial Hospital District ("Citizens") and CoxHealth filed Suggestions in Opposition (Doc. 140); nonparty University Health filed Suggestions in Opposition (Doc. 141); and Plaintiff filed a Reply. (Doc. 146). The motion is now ripe for adjudication on the merits. For the reasons stated herein, Plaintiff's Motion to Compel Compliance with Third-Party Subpoenas is **DENIED**.

## BACKGROUND

1

This case arises out of Senate Bill ("S.B.") 751 which created protections to the delivery of 340B drugs to contract pharmacies on behalf of "covered entities". Section 340B incentivizes pharmaceutical manufactures to provide qualified health care providers, referred to as "covered entities," with pricing discounts on certain drugs prescribed to individuals and families whose income falls below the federal poverty level. Covered entities have contracted with outside pharmacies or "contract pharmacies," for the distribution and dispensation of 340B drugs. S.B. 751 protects hospitals, federal qualified health centers ("FQHC"), and their patients from drug manufacturers' restrictions on the number of contract pharmacies a hospital or FQHC can use and still receive discount pricing under 340B plan. Plaintiff is a limited partnership organized under the laws of Delaware with its principal place of business in Wilmington, Delaware. State Defendants are all residents of Missouri that are responsible for administering and enforcing the provisions of S.B. 751. Intervenors Missouri Hospital Association and Missouri Primary Care Association are Missouri, not-for-profit member organizations.

On September 5, 2025, Plaintiff noticed and issued substantively identical subpoenas to nonparty covered entries Mercy Health, University of Missouri, SSM Health, University Health, CoxHealth, and Citizens Memorial (collectively "Third-Party Covered Entities"). Plaintiff seeks three specific categories of documents: (1) 340B policy and procedure documents; (2) representative contract pharmacy arrangements; and (3) documents sufficient to show how Respondents account for and use 340B revenue. All six third-party covered entities objected to the subpoenas based on relevancy, burden, and confidentiality issues. On November 18, 2025, the Court conducted a Telephone Conference with the parties and ordered that Plaintiff may file a motion to compel and directed briefing upon the issue. (Doc. 125). The Court further ruled recipients of the subpoenas need not comply until the Court adjudicates the issue, and should the

2

Court grant Plaintiff's motion to compel, the Court will extend the discovery deadline in this case. *Id*. As the parties have fully briefed the Court, the Court will now evaluate whether to compel compliance with the third-party subpoenas.

## STANDARD

Trial courts have broad discretion in settling discovery disputes. *Hofer v. Mack Trucks, Inc*., 981 F.2d 377, 381 (8th Cir. 1992). Federal Rule of Civil Procedure 26 guides the scope of discovery. The rule states the following.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).

In resolving discovery disputes, the burden is initially on the requesting party to make a threshold showing of relevance. *Burke v. Ability Ins. Co*., 291 F.R.D. 343, 349 (D.S.D. 2013). "While the standard of relevance in the context of discovery is broader than in the context of admissibility… this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." *Hofer* at 380. Assuming relevance, then the burden shifts to the resisting party to show the request is irrelevant, unduly burdensome, overly broad, or otherwise improper. *Carlton v. Union Pac. R. Co*., No. 8:05CV293, 2006 WL 2220977, at *2 (D. Neb. Aug. 1, 2006). The resisting party must do this by laying out specific facts, rather than claiming irrelevance or overbreadth in conclusory, boilerplate fashion. *St. Paul Reinsurance Co. v. Com. Fin. Corp*., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000).

## DISCUSSION

3

## I. Relevance

Plaintiff argues that the subpoenas seek evidence of substantial impairment. Specifically, Plaintiff argues that the subpoenas will show evidence that by requiring Plaintiff to offer its drugs at the 340B price for unlimited contract pharmacy sales, which are not otherwise required by its Pharmaceutical Pricing Agreement ("PPA"), S.B. 751 expands Plaintiff's obligations under the PPA and substantially impairs it. Plaintiff further argues that the subpoenas will show that S.B. 751 serves a legally impermissible purpose of redistributing benefits to third parties, namely covered entities and the pharmacies, with which they contract. Lastly, Plaintiff asserts that the subpoenas will show whether S.B. 751 is sufficiently well-tailored to survive constitutional scrutiny by showing to what extent covered entities pass on discounts to patients and whether revenue generated from 340B sales is reinvested to serve patient access needs or is instead used for other purposes.

Intervenors, Citizen's and CoxHealth argue that Plaintiff's Contracts Clause claim is governed by an objective standard that does not turn on non-public information. They argue that Plaintiff directs its subpoenas to materials having nothing to do with the core components of the objective test. In support they assert that whether S.B. 751 substantially impairs Plaintiff's preexisting contractual relationship depends not on whether S.B. 751 enriches pharmacies and hospitals at Plaintiff's expense but on whether Plaintiff's reasonable contract expectations have been disrupted. Intervenors, Citizens and CoxHealth argue that none of this information would come from the Third-Party Covered Entitles, rather, it would come from Plaintiff and its drug manufacturer peers. Thus Intervenors, Citizen's and CoxHealth assert that even if Plaintiff was right that discovery will show that covered entities and contract pharmacies in Missouri agree to

4

engage in contract pharmacy sales under S.B. 751 using an accounting mechanism known as the replenishment model, this fact would do nothing to advance Plaintiff's Contract Clause claim.

SSM and the University of Missouri concede that they use virtual inventory replenishment systems with their contract pharmacies, generally as described by Plaintiff. However, SSM and the University of Missouri argue that the details of replenishment have no impact on Plaintiff or its PPA. They contend that whether the non-party hospitals have one contract pharmacy or fifty, it is the wholesaler's delivery process that is impacted, not Plaintiffs. SSM and the University of Missouri assert that the only effect on Plaintiff is how many drugs it must sell at 340B discount prices and any details about replenishment models bear no relevance to the number of discounted sales Plaintiff would have to make. Further, SSM and the University of Missouri argue that how contract pharmacies and the non-party hospitals split savings from 340B discounts has no bearing on what Plaintiff must do under its PPA and that since non-party hospitals are covered entitles under the 340B program, they are free to decide how to use their savings to continue performing valuable services for low-income and rural communities.

University Health argues that Plaintiff's subpoenas do not seek information that bears on whether S.B. 751 imposes a substantial impairment on pre-existing contractual relationships. University Health contends that the existence of the parties' utilization of a virtual inventory model would have no bearing on whether these arrangements expand the limited range of transactions that a manufacturer must offer 340B pricing and therefore are in no way relevant to proving its remaining Contracts Clause claim in this suit. Specifically, University Health argues that the inventory model does not obligate a manufacturer like Plaintiff to make 340B-discounted sales to the contract pharmacy, or to any other party not expressly contemplated by the PPA. Further, University Health argues that Plaintiff's subpoenas do not request any information that bear on

5

whether S.B. 751 advances a significant and legitimate public purpose nor seek material that will demonstrate whether S.B. 751 is sufficiently well-tailored to survive constitutional scrutiny.

The Contract Clause of the United States Constitution provides that no state shall "pass any law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. A three-part test determines whether state action violates the Contract Clause. First the court asks whether "the state law has, in fact, operated as a substantial impairment on pre-existing contractual relationships." *Am. Fed'n of State, Cnty. & Mun. Emps. v. City of Benton, Arkansas*, 513 F.3d 874, 879 (8th Cir. 2008) (quoting *Equip. Mfrs. Inst. V. Janklow*, 300 F.3d 842, 850 (8th Cir. 2002)). The first prong involves a three-part inquiry: "(1) whether there is a contractual relationship; (2) whether a change in law impairs that contractual relationship; and (3) whether the impairment is substantial." *Gen. Motors Corp v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). If substantial impairment existed, the court will determine whether the state has a "significant and legitimate public purpose behind the regulation." *Educ. Employees Credit Union v. Mut. Guar. Corp.*, 50 F.3d 1432, 1438 (8th Cir. 1995). If there is no significant and legitimate public purpose, the state law is unconstitutional under the Contract Clause. *See Equip. Mfrs.*, 300 F.3d at 850. If, however the state identifies such a public purpose, the court will consider "whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 412, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983).

The Court agrees with Intervenors and the Third-Party Covered Entities. Plaintiff's first argument on why the subpoenas should be enforced is that it will show evidence that S.B. 751 expands Plaintiff's obligations under the PPA and substantially impairs it. However, the documents Plaintiff requests would have little relevance to that ultimate purpose. Plaintiff can

6

satisfy its claim through information that can be gathered through its own PPA and data ascertained by the wholesaler who supplies Plaintiff's drugs to the various covered entities and their contract pharmacies. The establishment of whether a covered entity and its contract pharmacy engage in a replenishment model type accounting would not further whether the alleged impairment Plaintiff suffers is substantial and thus has little relevancy. *See AbbVie Inc. v. Bailey*, No. 4:24-CV-00996-SRC, 2025 WL 1918948, at *8 (E.D. Mo. July 11, 2025).

Plaintiff's second argument that the requested information would show that S.B. 751 serves a legally impermissible purpose of redistributing benefits to covered entities and pharmacies is likewise lacking in connection to the Contract Clause claim. "Covered entities need not pass these savings on to patients or their insurers. As a result, covered entities can pocket significant sums when they buy drugs at the discounted 340B price but get paid by patients or insurers at much higher prices." *Pharm. Rsch. & Manufacturers of Am. v. McCuskey*, 171 F.4th 675, 683 (4th Cir. 2026) (citing *Novartis Pharm. Corp. v. Johnson*, 102 F.4th 452, 456–57 (D.C. Cir. 2024)). "Congress apparently hoped that the 340B program would provide covered entities with money to reach more patients and improve services." *Pharm. Rsch. & Manufacturers of Am. v. McCuskey*, 171 F.4th 675, 683 (4th Cir. 2026).

Covered entities need not pass along the 340B savings to patients. Rather covered entities can choose how to utilize the savings it gets from the 340B program. Even if Plaintiff can show that the benefits from the cost savings do not go directly back to patients or insurers has no bearing on whether the state law was enacted for an impermissible reason. Missouri enacted S.B. 751 (codified at Mo. Rev. Stat. § 376.414) in response to *Sanofi Aventis U.S. LLC v. United States Dep't of Health & Hum. Servs.*, 58 F.4th 696 (3d Cir. 2023) and *Novartis Pharms. Corp. v.*

7

*Johnson*, 102 F.4th 452 (D.C. Cir. 2024). *AbbVie Inc. v. Bailey*, No. 4:24-CV-00996-SRC, 2025 WL 1918948, at *4 (E.D. Mo. July 11, 2025). Specifically, S.B. 751 prohibits:

> A pharmaceutical manufacturer, third-party logistics provider, or an agent or affiliate of such pharmaceutical manufacturer or third-party logistics provider shall not deny, restrict, or prohibit, either directly or indirectly, the acquisition of a 340B drug by, or delivery of a 340B drug to, a pharmacy that is under contract with, or otherwise authorized by, a covered entity to receive 340B drugs on behalf of the covered entity unless such receipt is prohibited by the United States Department of Health and Human Services.

Mo. Rev. Stat. § 376.414.2. Covered entities are not required to pass the 340B savings onto patients or their insurers nor did the state promulgate S.B. 751 with that rationale. The Court finds that the information Plaintiff hopes to elicit from its subpoenas on Third-Party Covered Entities has little relevance as to its Contract Clause claim in this action.

Plaintiff's final argument that the subpoenas will show whether S.B. 751 is sufficiently well-tailored to survive constitutional scrutiny is likewise unpersuasive. Specifically, Plaintiff wishes to ascertain to what extent covered entities pass on discounts to patients and whether revenue generated from 340B sales is reinvested to serve patient access needs or is instead used for other purposes. As discussed above, this information would have little to do with Plaintiff's Contract Clause claim and what it needs to prove to be successful. In sum, the information Plaintiff requests from nonparty Third-Party Covered Entities in this action does not further the claims it must prove and thus ultimately is not relevant. For the reasons stated, Plaintiff's Motion to Compel Compliance with Third-Party Subpoenas is **DENIED**.

II.     **Burdensome & Confidentiality**

The Court, finding that the information Plaintiff requests is not relevant to the elements it must prove, will decline to further analyze whether Plaintiff's request are burdensome or raise confidentiality concerns.

**CONCLUSION**

For the reasons stated, Plaintiff's Motion to Compel Compliance with Third-Party Subpoenas is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 28, 2026

 _/s/ Douglas Harpool_____
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

9